1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

LORETTA HOYT,

8                                   Plaintiff,

9              v.                                              C12-1648 TSZ

10     LOCKHEED SHIPBUILDING                                   ORDER
       COMPANY,

11                                  Defendant.

12

13          THIS MATTER comes before the Court on Defendant Lockheed Shipbuilding

14     Company's ("Lockheed") motion for summary judgment, docket no. 62.  Having

15     reviewed all papers filed in support of and in opposition to the motions, the Court enters

16     the following order.

17     I.     **Background**

18          Plaintiff Loretta Hoyt claims that she developed mesothelioma as a result of

19     secondary or "take-home" exposure to asbestos.  Her father, Victor Lodahl, was

20     employed by Puget Sound Bridge and Dry Dock as a coppersmith from approximately

21     1948 to 1954.  Id. at ¶¶ 6-7.  During the course of his employment, Mr. Lodahl worked

22

23

ORDER - 1

1  with and around asbestos.  Id. at ¶ 7.  Plaintiff lived at home with her parents during this

2  time period.

3       Plaintiff's ex-husband, Leroy Birkholz, was employed by Puget Sound Bridge and

4  Dry Dock from approximately 1954 to 1958 as a pipefitter.  Id. at ¶¶ 4-5.  During the

5  course of his employment, Mr. Birkholz worked with and around asbestos.  Id. at ¶ 5.

6  During this time period Plaintiff lived with Mr. Birkholz.

7       Plaintiff alleges that Mr. Lodahl and Mr. Birkholz brought home asbestos fibers on

8  their hair, tools, and clothing at the end of the workday.  Id. at ¶ 14.  While she was living

9  at home with her parents, Plaintiff's mother did the family's laundry in the basement.

10 Hoyt Perpetuation Depo. at 14 (Couture Decl., Ex. 4).  Plaintiff's bedroom was also in

11 the basement and dust from her father's work clothes got into her bedroom.  Id. at 15.

12 During her marriage to Mr. Birkholz, Plaintiff did all of the couple's laundry.  Birkholz

13 Depo. at 20-21 (Couture Decl., Ex. 6).  When she washed Mr. Birkholz's work clothes,

14 she would shake them out before washing them because "they were dirty and dusty."

15 Hoyt Perpetuation Depo. at 12 (Couture Decl., Ex. 4).

16       Plaintiff claims that her exposure to the asbestos that her father and ex-husband

17 brought home on their clothes while they worked at Puget Sound Bridge and Dry Dock

18 caused her to develop mesothelioma.  She brings this action for damages for personal

19 injuries against Lockheed Shipbuilding Company, the successor-in-interest to Puget

20 Sound Bridge & Dredging Corporation.  Id. at ¶ 15.  She alleges that Defendant

21 negligently failed to exercise its duty of care to provide its employees with a safe work

22

23

1  environment and that it was reasonably foreseeable that Lockheed's negligence would

2  result in its employee's family members being exposed to asbestos.  Id. at ¶¶ 13-14.

3       Lockheed moves for summary judgment on the grounds that it did not owe

4  Plaintiff a duty of care and that injury to Plaintiff was not foreseeable at the time of

5  exposure.

6  **II.**   **Standard**

7       The Court shall grant summary judgment if no genuine issue of material fact exists

8  and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

9  The moving party bears the initial burden of demonstrating the absence of a genuine issue

10  of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A fact is material if

11  it might affect the outcome of the suit under the governing law.  Anderson v. Liberty

12  Lobby, Inc., 477 U.S. 242, 248 (1986).  To survive a motion for summary judgment, the

13  adverse party must present affirmative evidence, which "is to be believed" and from

14  which all "justifiable inferences" are to be favorably drawn.  Id. at 255, 257.  When the

15  record, however, taken as a whole, could not lead a rational trier of fact to find for the

16  non-moving party, summary judgment is warranted.  See Beard v. Banks, 548 U.S. 521,

17  529 (2006) ("Rule 56(c) 'mandates the entry of summary judgment, after adequate time

18  for discovery and upon motion, against a party who fails to make a showing sufficient to

19  establish the existence of an element essential to that party's case, and on which that

20  party will bear the burden of proof at trial.'")(quoting Celotex, 477 U.S. at 322)).

21

22

23

ORDER - 3

1

III.    **Discussion**

In order to prevail in an action for negligence, a plaintiff must establish: (1) the

existence of a duty, (2) breach of that duty, (3) proximate cause, and (4) resulting injury.

Alhadeff v. Meridian on Bainbridge Island, LLC, 167 Wn.2d 601, 618, 220 P.3d 1214

(2009).  The only element at issue in this motion for summary judgment is the existence

of a duty.[1]  Lockheed contends that it did not have a duty to the Plaintiff because (1)

Washington Courts do not recognize a duty to prevent "take home" asbestos exposure,

and (2) the harm to Plaintiff was not foreseeable because Lockheed did not have actual or

constructive knowledge of the risk of cancer from "take-home" or "secondary" asbestos

exposure during the time-frame that Plaintiff's father and ex-husband worked at

Lockheed.

The existence of a legal duty is an issue of law to be decided by the court, Folsom

v. Burger King, 135 Wn.2d 658, 671 (1998), and generally includes a determination of

whether the harm was foreseeable.  Rochon v. Saberhagen Holdings, Inc., 2007 WL

2325214, at *1 (Div. 1, 2007).

1.   **Does a corporation have a duty to prevent "take home" or secondary exposure to asbestos?**

Plaintiff contends that under Washington law a corporation has a duty to prevent

"take home" exposure to asbestos.  She relies on Arnold v. Saberhagen Holdings, Inc.,

157 Wn. App. 649 (Div. 2, 2010) and Rochon v. Saberhagen Holdings, Inc., 2007 WL

---

[1] Lockheed does not contest for purposes of summary judgment that Plaintiff's father and ex-husband were exposed to asbestos attributable to Lockheed.  Defendant's Motion for Summary Judgment at 5; Reply at 1-2.

ORDER - 4

2325214 (Div. 1, 2007).  Lockheed argues that it did not owe Plaintiff a duty of care because she was not an employee or an invitee.  Lockheed relies on cases from several other jurisdictions to support its position and argues that, to the extent Arnold suggests otherwise, the Court should conclude that Arnold was wrongly decided.

Because the existence of a common law duty is an issue of state law, the task of this Court is to predict how the Washington State Supreme Court would rule on this question.  "'In the absence of [a decision from the Washington State Supreme Court], a federal court must predict how the highest state court would decide the issue, using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance.'"  Arizona Elec. Power Coop., Inc. v. Berkeley, 59 F.3d 988, 991 (9th Cir. 1995) (quoting In re Kirkland, 915 F.2d 1236, 1239 (9th Cir. 1990)).  "However, where there is no convincing evidence that the state supreme court would decide differently, 'a federal court is obligated to follow the decisions of the state's intermediate appellate courts.'"  Lewis v. Tel. Employees Credit Union, 87 F.3d 1537, 1545 (9th Cir. 1996) (quoting Kirkland, 915 F.2d at 1239).  For the following reasons, the Court concludes that the Washington State Supreme Court would recognize an employer's duty to take reasonable precautions to protect employee's family members from "take-home" exposure to asbestos.

The issue of whether a company may be liable for "take home" or secondary exposure to asbestos is not an issue of first impression in Washington.  In Arnold v. Saberhagen Holdings, Inc., the plaintiffs sued Lockheed and others for asbestos-related injuries stemming from Ruben Arnold's work as an insulation contractor for Lockheed in

the 1960s.  157 Wn. App. 653.  The claims were twofold.  First, Ruben's estate asserted a primary liability claim for Ruben's exposure to asbestos at Lockheed after he passed away from mesothelioma.  Second, Ruben's wife and son asserted injuries from "take home exposure" to asbestos, claiming that Ruben brought home asbestos fibers on his work clothing and exposed them to the dangerous substance.[2]  Id. at 653.  The plaintiffs asserted that Lockheed "owed common law and statutory or regulatory duties both to [Ruben] and to his family members at home to protect them from the hazards of exposure to asbestos on the premises."  Id. at 654.

After the trial court granted summary judgment dismissing the plaintiffs' claims against Lockheed, the Court of Appeals reversed.  The focus of the Court's analysis was on Lockheed's duty to Ruben as a landowner and as a general contractor.  Id. at 661. However, the Court reversed the summary judgment dismissal of the wife and son's claims for "take-home exposure," concluding that there were material issues of fact for trial.  Id. at 653 ("We affirm the trial court's grant of summary judgment to Lockheed with regard to Daniel's primary exposure claim, but reverse with regard to the Arnolds' other claims."), 671.  In so holding, the Court concluded that Lockheed "owed common law and statutory or regulatory duties both to [Ruben] **and to his family members at**

---

[2] Daniel Arnold, Ruben's son, also brought a claim for direct exposure to asbestos based on his work as an insulator at a Lockheed shipyard for a period in 1979-80.  During this period, Daniel wore a protective suit and a respirator.  Arnold, 240 F.3d 165.  The Court of Appeals affirmed the summary judgment dismissal of Daniel's direct exposure claim.  Id. at 174.  As a result, only Daniel's claim arising from secondary exposure was addressed in the appellate court's decision.

ORDER - 6

1   ***home to protect them from the hazards of exposure to asbestos*** on the premises." Id. at

2   654 (emphasis added).

3        The Washington State Court of Appeals also addressed the issue of liability for

4   "take home" exposure to asbestos in Rochon v. Saberhagen Holdings.  In that case, the

5   Washington State Court of Appeals addressed the same issue raised in the present motion

6   for summary judgment: whether Washington law recognizes an employer's duty of care

7   to prevent secondary or "take home" exposure to asbestos.  2007 WL 2325214 (Div. 1,

8   2007).  There, the plaintiff's husband was exposed to asbestos at work and the plaintiff

9   allegedly inhaled asbestos fibers while laundering her husband's clothing and developed

10  mesothelioma as a result.  Id., at *1.  The plaintiff brought a claim for personal injury

11  against her husband's employer under a general negligence theory, arguing that the

12  employer breached its duty of care by failing to prevent her "take home" exposure to

13  asbestos.  The trial court dismissed plaintiff's claim, concluding that the defendant did

14  not owe her a duty of care.  Id.  The court of appeals reversed, concluding that the cause

15  of the plaintiff's illness was the employer's own affirmative act of operating its factory in

16  an unsafe manner.  Id. at *3.  Thus, the Court reasoned, the employer "had a duty to

17  prevent injury from an unreasonable risk of harm that it itself created."  Id.

18       In reaching this conclusion, the Court rejected the defendant's argument that

19  "employer liability does not extend to employees' spouses and homes, and premises

20  liability does not extend outside of the premises."  Id.  The Court also rejected the

21  argument that extending a duty to employers in "take home" exposure cases "will expose

22  employers to endless litigation."  Id. at *4.  The Court concluded that liability was

23

1    sufficiently limited because liability only extends if the victim "proves that his or her

2    injury was a foreseeable consequence" of the employer's actions. Id. at *5.

3            Although Rochon is an unpublished decision, it also provides guidance as to the

4    result that the Washington State Supreme Court would likely reach if faced with the same

5    question. The Court notes that Rochon relies on the Court of Appeal's published

6    decision in Lunsford v. Saberhagen Holdings, Inc., 125 Wn. App. 784 (Div. 1, 2005). In

7    that case, the plaintiff alleged claims in negligence and strict product liability against the

8    manufacturer of asbestos insulation. Id. at 787. Plaintiff claimed that he was exposed to

9    asbestos fibers that his father brought home on his clothing and tools from his work as an

10   insulator at an oil refinery and that he developed lung cancer as a result of the exposure.

11   Id. The trial court dismissed plaintiff's claim on summary judgment, concluding that a

12   household member was not a "user" of the product. Id. The Court of Appeals reversed,

13   holding that a household member may be a product user if his exposure was reasonably

14   foreseeable. Id. at 793. While Lunsford involved claims against a manufacturer rather

15   than an employer for "take home" exposure to asbestos and is therefore not directly on

16   point on whether a duty existed in the present case, the court's analysis is nevertheless

17   helpful. The decision demonstrates, as a factual matter, that a family member may be a

18   foreseeable victim of asbestos exposure in a negligence action premised on "take home"

19   exposure.

20          Lockheed argues that Arnold and Rochon are not good law, resting its position on

21   the Washington Supreme Court's opinion in Simonetta v. Viad Corp., 165 Wn.2d 341

22   (2008). However, Simonetta does not require a different result. In Simonetta, a former

23

1    Navy machinist brought an action against the manufacturer of an evaporator used for the

2    desalinization of seawater.  After the evaporator was shipped to the Navy, it was

3    insulated with asbestos products manufactured by another company.  Plaintiff claimed

4    that he was required to remove the asbestos insulation and then reinsulate the machine in

5    order to service it.  He alleged that he contracted lung cancer as a result of his exposure to

6    asbestos in this manner and that the manufacturer of the evaporator was liable in

7    negligence for failure to warn of the danger.  After the trial court dismissed plaintiff's

8    claim, concluding that the evaporator itself did not produce the injury even though the

9    defendant manufacturer knew or should have known that its product would be insulated

10   with asbestos, plaintiff appealed.  Id. at 346-47.  The Court of Appeals reversed,

11   concluding that the manufacturer had a duty to warn.  Defendant appealed and the

12   Washington State Supreme Court granted review.  Id. at 347.

13        On appeal, the Washington Supreme Court addressed the issue "of whether under

14   the common law a manufacturer can be held liable for failure to warn of the hazards of

15   another manufacturer's product."  Id. at 345.  The Court concluded that because the

16   manufacturer was not within the chain of distribution of the dangerous product, it had no

17   duty to warn the plaintiff of the dangers associated with asbestos insulation.  Id. at 363.

18   In reaching its conclusion, the Court noted in a footnote that it agreed with the Court of

19   Appeals that "[f]oreseeability does not create a duty but sets limits once a duty is

20   established."  Id. at 349 n.4.  Lockheed argues based on this statement that the Supreme

21   Court would not follow Rochon and Arnold, because those cases recognize foreseeability

22   as relevant in determining whether a party has a duty to prevent harm.

23

ORDER - 9

1      This Court does not read the Supreme Court's footnote in <u>Simonetta</u> as a

2  wholesale rejection of the relevance of foreseeability to the analysis of whether a party

3  owes a duty of care in a particular situation.   The foreseeability of injury was not disputed

4  in that case.   The issue was whether the manufacturer had a duty to warn workers like

5  Simonetta "of a known danger."   <u>Simonetta v. Viad Corp.</u>, 137 Wn. App. 15, 23, 151

6  P.3d 1019 (Wash. App. Div. 1, 2007).   The fact that the "foreseeability of injury" plays a

7  role in determining whether a party has a duty to protect others from a risk of harm is

8  supported by numerous other opinions from the Washington Supreme Court.   <u>See</u>, <u>e.g.</u>,

9  <u>Keller v. City of Spokane</u>, 146 Wn.2d 237, 243, 44 P.3d 845 (2002) (whether a duty

10  exists depends, in part, on whether the harm that occurred was foreseeable); <u>Hansen v.</u>

11  <u>Friend</u>, 118 Wn.2d 476, 479, 824 P.2d 483 (1992) (whether a municipality owes a duty in

12  a particular situation generally includes a determination of whether the incident that

13  occurred was foreseeable); <u>King v. City of Seattle</u>, 84 Wn.2d 239, 248, 525 P.2d 228

14  (1974) ("foreseeability of the risk of harm to the plaintiff is an element of the duty

15  question"); <u>Berglund v. Spokane County</u>, 4 Wn.2d 309, 321, 103 P.2d 355 (1940)

16  (whether county owed duty to negligent driver was a question of foreseeability).   There is

17  no indication in <u>Simonetta</u> that the Supreme Court intended to overrule these prior

18  decisions.   Lockheed's argument that foreseeability plays no role in the determination of

19  whether a duty exists is not consistent with existing case law in Washington.

20      Defendant also cites to a number of cases from other jurisdictions where the court

21  concluded that there was no duty to protect the plaintiff from "take home" or secondary

22  asbestos exposure.   <u>See</u>, <u>e.g.</u>, <u>Holdhampf v. A.C. & Sons, Inc. (In re New York City</u>

23

1  Asbestos Litigation), 5 N.Y.3d  486, 493-96 (2005);  CSX Tranp., Inc. v. Williams, 278

2  Ga. 888 (2005); Adams v. Owens-Illinois, Inc., 119 Md. App. 395 (1998).  The Court

3  concludes that these cases are not persuasive.  "[W]here there is no convincing evidence

4  that the state supreme court would decide differently, 'a federal court is obligated to

5  follow the decisions of the state's intermediate appellate courts.'"  Lewis, 87 F.3d at 1545

6  (quoting Kirkland, 915 F.2d at 1239).

7          Here, Plaintiff contends that Lockheed owed her a duty to "exercise reasonable

8  care to protect others from an unreasonable risk of harm arising out of its own affirmative

9  act of operating its shipyard in an unsafe manner."  Response at 17.  This is consistent

10  with the Court's holding in Rochon that a party has a duty to prevent unreasonable risk of

11  harm to others from his or her own actions.  2007 WL 2325214, at *3; see also

12  Restatement Second of Torts, § 302 cmt. a ("Anyone who does an affirmative act is

13  under a duty to others to exercise the care of a reasonable man to protect them against an

14  unreasonable risk of harm to them arising out of the act.").  While recognizing that the

15  Washington Supreme Court has not addressed the issue of whether an employer owes a

16  duty to the family members of its employees to protect them from "take home" exposure

17  to asbestos, the Court concludes that the Washington Supreme Court would acknowledge

18  this duty under the state common law.  This conclusion is supported by the Washington

19  State Court of Appeals decisions in Arnold and Rochon holding that an employer has a

20  duty to prevent a plaintiff's injury from "take home" exposure to asbestos.  Arnold, 157

21  Wn. App. 653; Rochon, 2007 WL 2325214, at *4.  It is also supported by the thoughtful

22  reasoning of the Tennessee Supreme Court in Satterfield v. Breeding Insulation Co.,

23

ORDER - 11

1  holding that an employer has a duty to use reasonable care to prevent exposure to

2  asbestos fibers by persons who come into close regular contact with its employees

3  contaminated work clothes over an extended period of time.  266 S.W.3d 347, 352

4  (2008).  Lockheed has not provided "convincing evidence" that the state supreme court

5  would reach a different conclusion than the Court of Appeals did in Arnold and Rochon.

6         **2.  Was the risk of Plaintiff developing mesothelioma from secondary**
          **asbestos exposure foreseeable at the time of exposure?**

7         The second issue raised by Lockheed is whether injury to the Plaintiff was

8  foreseeable.  Negligence is conduct that "'falls below the standard established by law for

9  the protection of others against unreasonable risk.'"  Hunsley v. Giard, 87 Wn.2d 424,

10  435 (1976) (quoting W. Prosser, Handbook of the Law of Torts § 43, at 250 (4th

11  ed.1971)).  Generally, an actor's conduct falls below the standard of care if it "involves a

12  foreseeable risk, a threatened danger of injury, and conduct unreasonable in proportion to

13  the danger.'"  Id.  If a defendant cannot reasonably foresee any injury as the result of his

14  action, the person who created the risk generally does not have a duty to prevent it.

15  Parrilla v. King County, 138 Wn. App. 427, 157 P.3d 879 (2007); accord Rochon, 2007

16  WL 2325214, at *1-2.  "Foreseeability is used to limit the scope of the duty owed

17  because actors are responsible only for the foreseeable consequences of their acts."

18  Schooley v. Pinch's Deli Market, Inc., 134 Wn.2d 468, 477 (1998) (citing Burkhart v.

19  Harrod, 110 Wn.2d 381, 395 (1988).

20         In order for harm to be foreseeable, a plaintiff must demonstrate that the defendant

21  knew or should have anticipated an unreasonable risk of danger to the plaintiff or others

22

23

ORDER - 12

1   in his class.   See, e.g., Lockwood v. AC & S, Inc., 44 Wn. App. 330, 366 (1986) (In a

2   products liability action brought on a theory of negligence, a plaintiff must prove that the

3   defendant knew or should have anticipated an unreasonable risk of danger to him or

4   others in his class); J.N. v. Bellingham Sch. Dist., 74 Wn. App. 49, 58 (1994) (Wrongful

5   activities are foreseeable "only if the [defendant] knew or in the exercise of reasonable

6   care should have known of the risk that resulted in their occurrence.'"); Brant v. Market

7   Basket Stores, Inc., 72 Wn.2d 446, 451-52 (1967) (affirming trial court's dismissal of

8   premises liability slip-and-fall claim where there was no evidence that store employees

9   knew or should have known of the slippery condition).   Normally, foreseeability is an

10   issue for the trier of fact and the Court will decide foreseeability as a matter of law only

11   where reasonable minds could not differ.   Id. (citing Christen v. Coates, 113 Wn.2d 479,

12   492 (1989)).

13          In the present case, Lockheed contends that it did not owe a duty to the Plaintiff

14   because the risk of developing mesothelioma from secondary or "take home" exposure to

15   asbestos was not foreseeable in the period of 1948-1958.   Lockheed contends that, while

16   the risk to its employees from asbestos exposure may have been foreseeable in the 1950s,

17   the risk to Plaintiff was not foreseeable because the first epidemiological studies tying

18   lung cancer to "take home" asbestos exposure did not appear in the medical literature

19   until the 1960s.[3]  Lockheed points to several decisions from other jurisdictions where

20

21   _____

22   [3] The Parties' dispute when the first study was published that would have put Lockheed on "notice" of the
    risk of "take home" asbestos exposure.  Plaintiff argues that a 1960 article by Dr. J.C. Wagner in the
23   British Journal of Industrial Medicine, in which he detailed mesothelioma case studies in South Africa,

courts have concluded that the risk of harm from "take-home" asbestos exposure was not

foreseeable until, at the earliest, the publication of epidemiological studies in the 1960s

linking mesothelioma to household exposure to asbestos dust.  See, e.g., Martin v.

Cincinnati Gas & Electric Co., 561 F.3d 439, 444-45 (6th Cir. 2009) (holding that

"without any published studies or any evidence of industry knowledge of bystander

exposure there is nothing" to support charging defendant with knowledge of risk of "take

home" exposure during the period from 1951-63); Exxon v. Altimore, 256 S.W.3d 415,

425 (2008) (reversing award of damages based on secondary exposure that occurred

between 1942-1972 because plaintiff failed to present evidence of knowledge of risk to

family members of asbestos workers during the relevant time-frame); Alcoa v. Behringer,

235 S.W.3d 456, 460-61 (2007) (not foreseeable in the 1950s to an ordinary employer

that used, but did not manufacture, asbestos that intermittent, non-occupational exposure

to asbestos could put people at risk of contracting serious illness).  This Court conducted

an independent review of the case law, and found no case in which a court has concluded

that the risk of "take home" exposure was foreseeable in the 1950s.

Plaintiff responds that Lockheed "knew or should have known" of the risk of "take

home" exposure during the 1950s because asbestos was a known workplace hazard and

the general risk of developing lung cancer from asbestos exposure was well documented

---

warned of the risk of secondary exposure.  Castleman Decl. at 7.  Defendant contends that the first
published study of lung cancer resulting from secondary or "take home exposure" was published in 1965
by Newhouse and Thompson.  This is a dispute without a difference in the present case because Plaintiff's
exposure occurred prior to the publication of either the Wagner study or the Newhouse and Thompson
study.

1   in the medical community at that time.  As evidence that Lockheed had knowledge of the

2   risk posed by asbestos exposure in the 1950s, Plaintiff points to the minutes from the

3   Pacific Coast Shipyard Safety Conference attended by Lockheed in 1945, which indicate

4   that the topic of occupational risk from asbestos insulation was covered.  See Couture

5   Decl., Ex. 15.  In addition, she points to the 1952 Walsh Healy Public Contracts Act

6   ("Act"), which was incorporated into Lockheed's contracts with the United States Navy,

7   Couture Decl., Exs. 16-17, and lists asbestos as a potentially harmful workplace dust and

8   contains various regulations aimed at reducing exposure.  Id.  Finally, Plaintiff provides

9   the expert report of Dr. Barry Castleman.  Castleman Report (Couture Dec., Ex. 19).  Dr.

10  Castleman provides an extensive overview of the medical literature concerning asbestosis

11  and asbestos related cancers and opines that the "hazard of asbestos exposure to families

12  of the workers was scientifically knowable before 1954 when Mrs. Hoyt's ex-husband,

13  Mr. Birkholz, began bringing asbestos home on his clothes from his work at the

14  Lockheed shipyard."  Id. at 14.

15         Plaintiff argues that the risk to her was foreseeable because Washington case law

16  has long held that foreseeability does not require knowledge of the specific harm, but

17  rather that "the harm sustained must be reasonably perceived as being within the general

18  field of danger covered by the specific duty owed by the defendant."  Christen v. Lee,

19  113 Wn.2d 479, 492 (1989) (internal quotation omitted); see also Bergland v. Spokane

20  Cnty, 4 Wn.2d 309, 320 (1940) (holding that "if the harm suffered falls within the general

21  danger area, there may be liability, provided other requisites of legal causation are

22  present."); Rikstad v. Holmberg, 76 Wn.2d 265 (1969) ("[P]ertinent inquiry is not

23

ORDER - 15

1  whether the actual harm was of a particular kind which was expectable.  Rather the

2  question is whether the actual harm fell within a general field of danger which should

3  have been anticipated.").  Plaintiff contends that because the risk of harm to Lockheed's

4  employees was known in the 1950s, "take home" exposure fell within the "general field

5  of danger."

6          The Court concludes that the risk of danger from "take home" asbestos exposure

7  to family members of Lockheed employees was not foreseeable in the 1950s.  Although

8  Plaintiff's situation is sympathetic, the evidence that Plaintiff proffers to support

9  Lockheed's knowledge of the risk of "take home" asbestos exposure in the 1950s is

10  insufficient to create a material issue of fact for trial.  There is no evidence that Lockheed

11  had actual knowledge of the danger of secondary or "take home" exposure until the

12  1960s.  The first case study of non-occupational asbestos exposure was published by

13  Newhouse and Thompson in 1965.  Alcoa, 235 S.W.3d at 461.  Because there is no

14  evidence of actual knowledge, the question is whether the Defendant should have known

15  of the risk: "that is, was such a risk foreseeable to them based on 'common knowledge at

16  the time and in the community.'"  Martin, 561 F.3d at 445 (quoting Restatement (Second)

17  of Torts § 289(a)).

18          Plaintiff has not proffered any evidence that the risk of "take home" exposure was

19  foreseeable based on common knowledge at the time and in the community.  The

20  regulations that Plaintiff cites only address occupational exposure and do not make any

21  mention of bystander exposure.  The first regulations that expressly mandated restrictions

22  on allowing asbestos to be carried home on workers clothing were the Occupational

23

ORDER - 16

1  Safety and Hazard Administration regulations instituted in 1972.  <u>Alcoa</u>, 235 S.W.3d at

2  461.

3       Dr. Castleman's expert report is also insufficient to demonstrate that foreseeability

4  of harm to the plaintiff during the time-frame of her exposure.  Dr. Castleman offered the

5  same testimony in <u>Martin v. Cincinnati Gas & Electric Co.</u>, agreeing that the first

6  published studies showing a risk of mesothelioma from "take-home" exposure were not

7  published until the 1960s, but testifying that the risk of bystander exposure to family

8  members was "knowable" beginning in the 1950s.  561 F.3d at 444-45.  This Court

9  agrees with the <u>Martin</u> court that "it is insufficient that the danger was merely

10  knowable—the knowledge has to have been available to the defendant."  <u>Id.</u> at 445.  As

11  in <u>Martin</u>, there has been no showing here of any general knowledge of bystander

12  exposure in the industry during the 1950s.  <u>Id.</u>

13       The evidence that Plaintiff cites in opposition to Defendant's motion for summary

14  judgment supports the conclusion that in the 1950s Lockheed knew or had constructive

15  knowledge that asbestos exposure caused lung disease in workers with prolonged

16  exposure.  However, nothing that Plaintiff cites could lead a reasonable trier of fact to

17  conclude it was foreseeable that the wife of a Lockheed employee might contract lung

18  cancer as a result of being exposed to asbestos carried home on the clothes of her

19  husband.  For this reason, the Court concludes that there is no genuine issue of material

20  fact and Defendant's motion should be granted.

21

22

23

ORDER - 17

1

## IV.   <u>Conclusion</u>

The Court concludes that the Washington Supreme Court would recognize that an employer has a duty to prevent "take home" exposure to asbestos if harm to an employee's family member was reasonably foreseeable.  In the present case, Plaintiff has failed to raise a genuine issue of material fact whether Lockheed knew or should have known of the risk posed by "take home" exposure to asbestos during the 1950s when Plaintiff's exposure occurred.  Because the risk of harm to the Plaintiff was not reasonably foreseeable to Lockheed, the Court GRANTS the Defendant's motion for summary judgment, docket no. 62, and dismisses the case with prejudice.

IT IS SO ORDERED.

Dated this 26th day of June, 2013.

THOMAS S. ZILLY
United States District Judge

ORDER - 18